# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### HELENA DIVISION

| | |
|---|---|
| GARY TREMBLAY, | Cause No. CV 09-00015-H-DWM-RKS |
| Plaintiff, | ORDER TO SERVE COMPLAINT BY REQUESTING WAIVER OF SERVICE OF SUMMONS AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| vs. | |
| MIKE MAHONEY, et. al., | |
| Defendants. | (Defendants see D.Mont. L.R. 12.2) |

Plaintiff Gary Tremblay is a prisoner representing himself and proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

## I.  STATEMENT OF THE CASE

### A.    Jurisdiction

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 seeking to recover for alleged constitutional violations while incarcerated at the Montana State Prison.  Plaintiff's Complaint alleges excessive use of force, unlawful conditions of confinement, denial of mental health care, and improper use of a behavior management plan.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B.     Parties

Plaintiff is a state prisoner incarcerated at the Montana State Prison in Deer Lodge, Montana.

The named Defendants are: Mike Mahoney, Killean Thomas, Jill Buck, Mark Praxell, Dr. Scheafer, Greg Budd, Ben Bouley, Chris Connel, Officer Harris, Sgt. Foster, Sgt. Lapeir, Sgt. Carroll, K. Bosses, Cpt. McNeil, and Myron Beason.

### C.     Plaintiff's Allegations

#### 1.   Placement in Cell Contaminated with Feces

Plaintiff alleges he was placed in cells contaminated with feces, urine, and the blood of another inmate on three occasions.  Plaintiff alleges Defendants Lapeir housed him in a cell contaminated with feces on June 19, 2008.  He alleges Defendant Foster housed him in an isolation cell containing feces, blood, and the urine of another inmate who was infected with Hepatitis C on October 20, 2008. At that time Plaintiff had fresh cuts.

He contends Defendants Connel, Budd, Bosses, and Beason knew the cells were contaminated and failed to have the cells cleaned or Plaintiff moved.

#### 2.   Placement in Behavior Management Plan

Plaintiff alleges Killean Thomas approved a Behavior Management Plan

on July 29, 2008 for yelling and kicking a steel door and Unit Manager Ben Bouley placed Plaintiff on an "illegal" behavior management plan on August 19, 2008.

### 3. <u>Mental Health Care</u>

Plaintiff contends Jill Buck refused to help him and then dehumanized and insulted him and called him a liar in front of the whole block.  He contends Mark Praxell was the R.N. who came to the cell doors for rounds and Plaintiff told him many times he did not want pills, he wanted therapy.  He states Dr. Scheafer prescribed him pills and knew Plaintiff was expressing suicidal, murderous thoughts and put him on medication.   Plaintiff told Dr. Scheafer he wanted therapy, not pills.

### 4. <u>Excessive Use of Force</u>

On October 20, 2008, Cpt. McNeil and Officer Harris threatened and provoked Plaintiff with words and tazers.  Harris allegedly put handcuffs on Plaintiff so tightly they cut his wrists.  Defendants then kicked Plaintiff's feet trying to trip him down the stairs while he was handcuffed.  They then threatened to spray him in the isolation cell and leave him all night.  When he was instructed to come back to the door, they pulled on a rope connected to his handcuffs slamming Plaintiff into the door, purposely twisting and pulling the cuffs to inflict

pain.  Plaintiff alleges the door had blood, feces, and urine on it that was infected

with Hepatitis C and he had fresh cuts from glass and handcuffs.

Plaintiff alleges Mike Mahoney is the overseer of the prison.

## II. PRESCREENING

### A. Standard

As Plaintiff is a prisoner proceeding in forma pauperis, his Complaint is

subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Section

1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a
> complaint in a civil action in which a prisoner seeks redress from a
> governmental entity or officer or employee of a governmental entity
> [and][o]n review, the court shall identify cognizable claims or dismiss
> the complaint, or any portion of the complaint, if the complaint (1) is
> frivolous, malicious, or fails to state a claim upon which relief may be
> granted; or (2) seeks monetary relief from a defendant who is immune
> from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B)

("Notwithstanding any filing fee, or any portion thereof, that may have been paid,

the court shall dismiss the case at any time if the court determines that  . . .  (B) the

action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief.").

Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of a complaint before it is served upon the defendants if it is "frivolous" or "fails to state a claim upon which relief may be granted."  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted).  This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly, 550 U.S. 544*.  A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)(quoting *Bell, 127 S.Ct. at 1964* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The "plausibility standard" is guided by "[t]wo working principles." *Iqbal, 129 S.Ct. at*

1949.  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.  "Second, only a complaint that states a plausible claim for relief survives" and "[d]etermining whether a complaint states a plausible claim for relief will, . . . , be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 129 S.Ct. at 1949 (internal quotation marks and citation omitted).

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.  Legal conclusions must be supported by factual allegations. *Iqbal,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise

to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

Even after *Twombly*, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d. at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## B. Cruel and Unusual Punishment–Placement in Contaminated Cells

The Eighth Amendment protects persons who have been convicted of crimes from punishments that are both cruel and unusual. But, "[t]he Constitution

'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Nor is the Eighth Amendment a mandate for federal courts to become involved in routine prison administration.  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

Prison officials are required to insure that inmates receive adequate food, clothing, shelter and medical care.  *Farmer,* 511 U.S. at 832.  An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency.  The objective component requires conditions sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities."  *Rhodes,* 452 U.S. at 347.  Alternatively, a condition must be sufficiently serious so as to constitute a substantial risk of serious harm.  *Helling v. McKinney,* 509 U.S. 25, 33-35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety.  *Wilson v. Seiter,* 501 U.S. 294, 297, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Thus, to state a claim under the Eighth Amendment, the prisoner-plaintiff must show not only that prison officials were subjectively and actually indifferent to the plight he alleges, but also that the conditions themselves were objectively sufficiently serious to acquire constitutional dimension; that is, the conditions "must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347).

Generally, only the most severe deprivations can support an Eighth Amendment claim.  However, "[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing."  *See Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000).  "To find an Eighth Amendment violation, courts must identify specific conditions that fail to meet Eighth Amendment requirements."  *Hoptowit*, 682 F.2d at 1247; *see also id.* n.3.  A "totality of circumstances" test is not to be applied.  *Id.* at 1247.

Plaintiff's allegations that he was placed (at times naked and with fresh cuts on his body) in a cell contaminated with the feces, blood, and urine of another inmate are sufficient to state a claim.  *See Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)("Exposure to human waste, like few other conditions of confinement,

evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974)(Eighth Amendment violated where naked prisoner was placed in small, unclean cell without light, hygienic material, bedding, or adequate food, and where prisoner was not allowed to wash himself); *McCray v. Burrell, 516 F.2d 357, 366-69 (4th Cir. 1975)* (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), *cert. denied,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *cf. Anderson v. County of Kern,* 45 F.3d 1310, 1314 (9th Cir.), *amended,* 75 F.3d 448 (9th Cir.), *cert. denied,* 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995)(placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate the Eighth Amendment).

### C.  Mental Health Treatment

Plaintiff's allegations regarding his mental health care are construed as claims under the Eighth Amendment of the United States Constitution.  The

Eighth Amendment requires that prisoners receive adequate medical care, including mental health care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also* *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need."  *McGuckin*, 974 F.2d at 1059; *see also* *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).  That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation."  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)(citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of

a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "This

second prong-defendant's response to the need was deliberately indifferent-is

satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain

or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d

at 1096 citing *McGuckin*, 974 F.2d at 1060.  "A prisoner need not show his harm

was substantial; however, such would provide additional support for the inmate's

claim that the defendant was deliberately indifferent to his needs." *Id.*

Plaintiff's only allegations regarding a denial of mental health care are he

was prescribed medications when he thought he needed therapy.  This is not

deliberate indifference to a serious medical need.  Plaintiff admits he was

receiving treatment (i.e., medication) for his mental health needs, it just was not

the treatment he wanted.  A "difference of opinion between a prisoner-patient and

. . .  medical authorities regarding treatment does not give rise to a § 1983 claim."

*Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981);

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (same).  Plaintiff's mental

health claims fail as a matter of law and will be recommended for dismissal.

### D.  Behavior Management Plans

Plaintiff's allegations regarding his placement on a behavior management

plan also fail as a matter of law.  The conclusory statements the two behavior

management plans were illegal are insufficient to state a claim.  Even if Defendants failed to follow prison procedures regarding Plaintiff's placement in the behavior management plan, that is insufficient to state a claim.  Prison officials' alleged failure to follow prison regulations is not sufficient by itself to state a cognizable due process claim.  *See Walker v. Sumner*, 14 F.3d 1415, 1419-1420 (9th Cir. 1994)("[I]f state procedures rise above the floor set by the Due Process Clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny."), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In addition, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *See Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

### E.  Excessive Force

Eighth Amendment excessive use of force claims contain both a subjective and an objective component which require two inquiries:  (1) whether the official charged with inflicting force acted with a sufficiently culpable state-of-mind; and

(2) whether the force used was sufficiently serious to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under this standard, Plaintiff has alleged sufficient facts to state a claim for excessive use of force against Defendants Harris and McNeil.

### F.  Harassment

Plaintiff raises an allegation against Jill Buck that she dehumanized him, insulted him, and called him a liar in front of the whole block.  (Document 2: Complaint, p. 3).  Allegations of verbal harassment or verbal abuse by themselves do not rise to the level of a constitutional deprivation under 42 U.S.C. § 1983. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  This claim will be recommended for dismissal.

### G.  Defendant Mahoney

Section 1983 imposes liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability.  *Id.*  That is, Defendant Mahoney cannot be held liable just

because he oversees the Montana State Prison.  Instead, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  In order to be liable, a supervising officer has to "set in motion a series of acts by others  . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).

Plaintiff provided a detailed affidavit of the descriptions of his allegations against all the Defendants and does not mention Warden Mahoney.  The only mention of Warden Mahoney is that he is the overseer of the prison.  This is insufficient to state a claim against Warden Mahoney.

## III. CONCLUSION

Plaintiff has stated an Eighth Amendment claim for relief against Defendants Lapier, Foster, Connel, Bosses, Budd, and Beason based upon his placement in cells contaminated with the feces, blood, and urine of another inmate.  Similarly, he has stated Eighth Amendment claims for excessive use of force against Defendants Harris and McNeil.  These claims will be served upon Defendants.

For the reasons set forth above, Plaintiff failed to state a claim against Defendants Thomas, Bouley, and Carroll based upon his placement on a behavior management plan.  Similarly, he has not stated a claim for denial of mental health care against Defendants Buck, Praxell, or Scheafer.  He also did not state a claim against Defendant Buck for verbal harassment.  Finally, his allegations against Defendant Mahoney are insufficient to state a claim.

Based on the foregoing, the Court issues the following:

## ORDER

1.  Pursuant to Fed.R.Civ.P. 4(d), the Court will request Defendants Lapier, Foster, Connel, Bosses, Budd, Beason, Harris, and McNeil to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons.[1]  The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If these Defendants choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within 60 days after the entry date of this Order as reflected on the Notice of Electronic Filing, pursuant to Fed.R.Civ.P. 12(a)(1)(B).  *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive

---

[1]As Defendants Thomas, Bouley, Carroll, Buck, Praxell, Scheafer, and Mahoney are recommended for dismissal they do not need to file a responsive pleading at this time.

the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," Defendants are required to respond).

    2.  The Clerk of Court shall forward the documents listed below to:

Legal Counsel for the
Montana Department of Corrections
P.O. Box 201301
Helena, MT 59620-1301

    *       Plaintiff's Complaint (Document 2);

    *       Affidavit of Gary Tremblay (Document 7);

    *       this Order,

    *       a Notice of Lawsuit & Request to Waive Service of Summons; and

    *       a Waiver of Service of Summons

    Should counsel determine they do not represent Defendants Lapier, Foster, Connel, Bosses, Budd, Beason, Harris, and McNeil in this matter, they should notify the Court's Pro Se Department as soon as possible.

    Counsel for Defendants Lapier, Foster, Connel, Bosses, Budd, Beason,

Harris, and McNeil must file a "Notice of Appearance" as a separate document at the time an Answer or Rule 12 motion is filed. *See* D. Mont. L.R. 12.2.

    3.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

    4.  Pursuant to Fed.R.Civ.P. 5(a), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented.  Each party shall sign and attach a proper certificate of service to each document filed with the Court.  The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent.  The sender must sign the certificate of service.

    5.  Plaintiff <u>shall not</u> make any motion for default until at least seventy (70) days after the date of this Order.

6.  At all times during the pendency of this action, Plaintiff SHALL

IMMEDIATELY ADVISE the Court and opposing counsel of any change of

address and its effective date.  Such notice shall be captioned "NOTICE OF

CHANGE OF ADDRESS."  The notice shall contain only information pertaining

to the change of address and its effective date, except if Plaintiff has been released

from custody, the notice should so indicate.  The notice shall not include any

motions for any other relief.  Failure to file a NOTICE OF CHANGE OF

ADDRESS may result in the dismissal of the action for failure to prosecute

pursuant to Fed.R.Civ.P. 41(b).

Further the Court issues the following:

## RECOMMENDATIONS

All claims against Defendants Thomas, Bouley, and Carroll based upon

Plaintiff's placement on a behavior management plan; all claims for denial of

mental health care against Defendants Buck, Praxell, and Scheafer; all claims for

verbal harassment against Defendant Buck; and all claims against Defendant

Mahoney should be **DISMISSED WITH PREJUDICE** for failure to state a claim

upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 10th day of November, 2009.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE–
CV-09-00015-H-DWM-RKS / PAGE 21